Annick M. Persinger (SBN 272996)
Maren I. Christensen (SBN 320013)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone: (510) 254-6808
apersinger@tzlegal.com
mchristensen@tzlegal.com

Scott Edelsberg*
**EDELSBERG LAW, PA**
20900 NE 30th Ave., #417
Aventura, FL 33180
Telephone: (305) 975-3320
scott@edelsberglaw.com

Andrew Shamis*
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 400
Miami, FL 33132
Telephone: (305) 479-2299
ashamis@shamisgentile.com

Rachel Dapeer*
**DAPEER LAW, P.A.**
300 S Biscayne Blvd., #2704
Miami, FL 33131
Telephone: (305) 610-5223
rachel@dapeer.com

* *Pro Hac Vice to follow*
*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHONDRA MORRISSETTE, BRIDGETTE DAWSON, and SAMUEL MARTINEZ on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PROGRESSIVE WEST INSURANCE COMPANY, a foreign insurance company, UNITED FINANCIAL CASUALTY COMPANY, a foreign insurance company, and PROGRESSIVE SELECT INSURANCE COMPANY, a foreign insurance company,<br><br>Defendants. | Case No.: _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiffs Shondra Morrissette ("Morrissette"),  Bridgette Dawson ("Dawson"), and Samuel Martinez ("Martinez") (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, file this Class Action Complaint against Progressive West Insurance Company, United Financial Casualty Company, and Progressive Select Insurance Company (collectively "Progressive" or "Defendants"), and in support thereof state the following:

**INTRODUCTION**

1.      This is a class action lawsuit brought by Plaintiffs, the named insured under their respective Progressive automobile policies issued for private passenger auto physical damage including comprehensive and collision coverage (the "Policy").  Defendants' Policy promises payment of "Actual Cash Value" ("ACV") in the event of a total loss of an insured vehicle.  Pursuant to the terms of the Policy, ACV includes, *inter alia*, State sales tax and State-mandated regulatory fees.  However, in violation of its Policy, Progressive refuses to pay mandatory regulatory fees (or, in cases, underpays mandatory regulatory fees) when it purports to pay ACV to insureds who have suffered a total loss of their insured vehicle.

2.      Defendants are one of the largest passenger auto insurance carriers operating in the State of California. One of the coverages Progressive sells to consumers is comprehensive and collision coverage. Progressive systematically and uniformly underpaid Plaintiffs and thousands of other putative Class Members amounts owed its insureds who suffered the total loss of a vehicle insured with comprehensive and collision coverage.

3.      Pursuant to its standard Policy form language, Progressive is obligated to pay the full title, registration and regulatory fees imposed by the State of California on the purchase and registration of automobiles in the state ("ACV regulatory fees"). Nevertheless, Progressive, in violation of its contract, pays only a portion of such fees to all insureds, thus breaching its contract with every insured who suffered a total loss to their insured vehicle.

4.      This lawsuit is brought by Plaintiffs on behalf of themselves and on behalf of all other similarly situated insureds who have suffered damages due to Progressive's practice of refusing to pay

-1-

full ACV regulatory fees to first-party total loss insureds on physical damage policies containing comprehensive and collision coverages.

5. The failure to pay ACV regulatory fees on first-party total losses owed to Progressive insureds pursuant to Progressive's uniform policy language constitutes a breach of the policy.

## THE PARTIES

6. Plaintiff Morrissette is domiciled and resides in Contra Costa County, California, and is a citizen of the State of California.

7. Plaintiff Dawson is domiciled and resides in San Francisco County, California, and is a citizen of the State of California.

8. Plaintiff Martinez is domiciled and resides in San Luis Obispo County, California, and is a citizen of the State of California.

9. At all times material hereto, Progressive is and was a foreign corporation located in the State of Ohio, incorporated in Ohio and with its principal place of business in Ohio, and authorized to transact insurance in the State of California.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) Plaintiffs are members of the putative class, which consists of at least 100 members, and Plaintiffs and Defendants are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars exclusive of interest and costs; and (c) none of the exceptions under § 1332 apply to this claim.

11. Venue is proper in this Court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and Defendants are subject to personal jurisdiction in this district.

## INTRADISTRICT ASSIGNMENT

12. Assignment to the San Francisco or Oakland Division would be proper under Civil Local Rules 3-2(c) and 3-2(d). A substantial part of the events giving rise to Plaintiff Dawson's claims occurred in San Francisco, and a substantial part of the events giving rise to Plaintiff Morrisette's claims occurred in Richmond, California.

**AMOUNT IN CONTROVERSY**

13.     Although the precise number of class members is unknown to Plaintiffs at this time and can only be determined through appropriate discovery, Plaintiffs believe that because Defendants are among the largest motor vehicle insurers in the State of California and write hundreds of millions of dollars of physical damage coverage premiums, the class of persons affected by Defendants' unlawful practice consists of thousands of individuals or the class of persons affected are otherwise so numerous that joinder of all class members is impractical. The unlawful practice alleged herein is a standardized and uniform practice, employed by Defendants pursuant to standardized insurance policy language, and results in the retention by Defendants of insurance benefits and monies properly owed to Plaintiffs and the class members.

**FACTUAL ALLEGATIONS**

A.     **The Progressive Policy**

14.     Defendants' policy language as to comprehensive and collision coverage for ACV of total loss vehicles is standardized and is present in Progressive auto policies issued by Defendants in California. Indeed, Plaintiffs and all putative Class members were insured under a standard, form policy that includes identical material language. The Policy under which Plaintiffs were insured, which is materially identical to the Policy under which all putative Class members were insured, is affixed hereto as Exhibit A.[1]

15.     In Section IV of the Policy, entitled "DAMAGE TO A VEHICLE" Progressive states, in relevant part, that it will pay for "sudden, direct and accidental loss to a… covered auto." Ex. A at 26.

16.     "Covered auto" is defined as "an auto or trailer expressively identified by make, model and vehicle identification number on the declarations page for the coverages applicable to that auto or trailer." *Id.* at 5.

---

[1]     The Policies for each of the Plaintiffs are materially identical as it pertains to the Physical Damages Coverages relevant herein and all relevant definitions.

17.     The limit of liability is established as, *inter alia*, "the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible." *Id*. at 32.

18.     Actual cash value is not defined in the Policy. Pursuant to applicable state law, ACV includes an obligation to pay mandatory registration fees for total loss vehicle collision or physical damage other than collision coverage

19.     There is no difference, for purposes of Defendants' duty to pay ACV on a first-party total loss claim, between a collision total loss claim and a comprehensive total loss claim. *See generally id*.

20.     Clearly, then, the policy language does not further define ACV as including, for example: (1) any provision excluding mandatory regulatory fees from ACV; (2) any provision deferring payment of the ACV regulatory fees for any purpose whatsoever; or (3) any provision requiring an insured to obtain a replacement vehicle at all. Instead, the Policy establishes ACV as a *predictable amount* upon which both PROGRESSIVE and the insured can rely.

21.     The ACV of the insured vehicle is an independent amount. The ACV is the same whether the insured paid nothing for the total loss vehicle, paid less than what the vehicle was worth, or paid more than what the vehicle was worth. The ACV is the same whether the insured replaces the vehicle with a more expensive vehicle, a less expensive vehicle, or chooses not to replace the vehicle at all.

22.     The policy language applies to all covered autos irrespective of ownership interests— whether owned, financed or leased, insured autos are considered "owned" or are treated and defined identically for purposes of the policy.

**B.     Regulatory Fees Are Replacement Costs**

23.     The State of California imposes mandatory one-time and annual regulatory fees on the purchase and registration of all vehicles. Vehicles are required to be legally titled and registered in order to be used and operated in the State of California. California imposes fees on such transactions, including, but not limited to, a title transfer fee of $15.00, a registration fee of $60.00, county fees of up to $19.00, a California Highway Patrol ("CHP") fee of $26.00, a Transportation Improvement Fee ("TIF") of $25.00-$175.00, and a Vehicle License Fee ("VLF") of 0.65% of the adjusted vehicle value. These fee

amounts and categories – title transfer fee, registration fee, county fee, CHP fee, TIF, and VLF – are "ACV regulatory fees." It is impossible to replace a total loss vehicle—or to purchase any vehicle under any circumstances—without payment of fees. As mandatory, unavoidable fees, such fees are incontrovertibly part of the costs to replace a total-loss vehicle.

24.     As set forth above, Progressive promises to pay the ACV of an insured vehicle in the event of, *inter alia,* a total loss; and defines ACV as the replacement cost of the insured vehicle, less depreciation. Fees are an element of the replacement cost of the vehicle, and therefore incontrovertibly an element of the ACV of the insured vehicle. *Johnson v. Hartford Cas. Ins. Co.*, Case No. 15-cv-04138-WHO, 2017 WL 2224828, at *8 (N.D. Cal. May 22, 2017) (citing *Tolar v. Allstate Texas Lloyd's Co.*, 772 F. Supp. 2d 825, 831-32 (N.D. Tex. 2011) (explaining that the "ordinary meaning of replacement costs" in the context of ACV is "a composite of all reasonably foreseeable repair or replacement costs").

### C.     Progressive Systematically Fails to Pay Regulatory Fees for Total-Loss Vehicles

25.     Progressive's uniform procedure is to use a third-party vendor, Mitchell International Inc., ("Mitchell"), to determine the base and adjusted value of total loss vehicles by using the price to purchase comparable vehicles at the time of the loss.

26.     The adjusted vehicle value is otherwise known as the "Settlement" value of the vehicle. Plaintiffs do not challenge the determination of the adjusted vehicle value. Plaintiffs challenge Progressive's application of its policy. In other words, Plaintiffs challenge Progressive's failure to pay mandatory fees, and not the adjusted vehicle value determined by the appraiser.

27.     In addition to the Settlement value (which takes into account depreciation and condition), other mandatory replacement costs—title fees, registration fees, and sales tax—are a component of the ACV, and, therefore, should be included in Defendants' calculation of the ACV. *See Johnson*, 2017 WL 2224828, at *8.

28.     Progressive's Policy permits deductions for depreciation and subtraction of any applicable deductible and salvage retention value from the ACV owed to insureds.

29.     Under the terms of the Policy, therefore, the ACV of a vehicle is the adjusted vehicle value, *plus* mandatory regulatory fees (title and registration fees) and sales tax. Thus, the amount owed

insureds who suffer a total loss is the adjusted vehicle value, plus mandatory regulatory fees (title and registration fees) and sales tax, less any applicable deductible and salvage retention value.

30.     Nevertheless, in California, Progressive uniformly does *not* pay the full regulatory fees owed as a part of the ACV replacement costs for the total loss vehicle.

31.     Progressive's Policy does not contain any provision or clause stating Progressive will pay only a prorated or partial amount of the costs to replace the insured vehicle. Instead, Progressive simply promises to pay the costs to replace the vehicle. Moreover, by excluding depreciation and actual condition from the costs of replacement, Progressive further indicates that replacement costs *not* excluded would be paid. If Progressive had wanted to exclude all or part of the replacement costs (like depreciation and condition), it could have done so.

32.     Progressive's Policy does not distinguish between owned, financed, and leased vehicles; instead, it explicitly treats them the same for purposes of ACV payments. It promises to pay precisely the same amount—replacement costs of the insured vehicle minus depreciation—to every policyholder.

33.     Progressive's Policy promises payment of regulatory fees as part of the cost to replace the vehicle, without taking into account, for example, what amount, if any, was previously paid for the vehicle, nor what amount, if any, is actually incurred in replacing the vehicle. In fact, if the insured received the vehicle as a gift and, therefore, paid no regulatory fees at all, the ACV of the insured vehicle, according to the terms of the Policy, is nevertheless unaffected. If the insured *does not replace the total loss vehicle at all*, the ACV of the vehicle is unaffected. Progressive's Policy does not condition payment of ACV on actual replacement. *See generally* Ex. A.

### D.     Plaintiffs' Total Loss Claims

**Plaintiff Morrissette**

34.     At all times material hereto, Plaintiff Morrissette owned and insured a 2015 Hyundai Sonata Eco, VIN # 5NPE24AA7FH137348.

35.     Morrissette insured the 2015 Hyundai Sonata Eco/SE (the "insured vehicle") under an insurance policy issued by Progressive. Ex. A; Ex. B (Morrissette Declarations Sheet).   Progressive insured Morrissette's vehicle according to this Policy at all times material hereto.

36.     On or about August 6, 2018, Morrissette was involved in an accident while operating the insured vehicle. As a result of said accident, Morrissette filed a claim for property damage with Progressive, claim number 18-4446863-01. Ex. C (Market Valuation Report) (the "Report").

37.     Following the filing of said claim, Progressive, through its third-party vendor, Mitchell, determined that the vehicle was a total loss with a base value of $18,196.73, with no applicable condition adjustments, but a deductible of $1,000.00 and therefore a Settlement Value of $17,196.73. *Id*.

38.     Progressive added sales tax in the amount of $1,692.85, for a total payment of $18,993.90.00. Ex. D (Total Loss Settlement Summary).

39.     Progressive did not include any state or local regulatory fees in making its ACV payment to Morrissette, thereby breaching the terms of Morrissette's Policy.

40.     Morrissette paid all premiums owed and otherwise satisfied all conditions precedent such that her insurance policy was in effect and operational at the time of the accident. By paying the claim—albeit insufficiently—Progressive acknowledged that Morrissette satisfied all conditions precedent required under the Policy.

**Plaintiff Dawson**

41.     At all times material hereto, Plaintiff Dawson owned and insured a 2005 Lexus SC 430, VIN# JTHFN48Y050062369.

42.     Dawson insured the 2005 Lexus (the "insured vehicle") under an insurance policy issued by Progressive. Ex. A; Ex. E (Dawson Declarations Sheet).   Progressive insured Dawson's vehicle according to this Policy at all times material hereto.

43.     On or about January 3, 2019, Dawson was involved in an accident while operating the insured vehicle. As a result of said accident, Dawson filed a claim for property damage with Progressive, claim number 19-2700765. Ex. F (Market Valuation Report) (the "Report"). Following the filing of said

claim, Progressive, through its third-party vendor, Mitchell, determined that the vehicle was a total loss with a base value of $16,482.33, with a condition adjustment to reduce the vehicle by $449.32, and an applicable deductible of $1,000.00 and therefore a Settlement Value of $15,033.01. *Id*.

44.     The base value and adjusted vehicle value are calculated by Mitchell based on the "sticker price" of comparable vehicles listed for sale in the local market.

45.     Progressive added sales tax of $1,483.05 and state and local regulatory fees of $15.00, for a total payment of $16,531.06. Exhibit G (Total Loss Settlement Summary).

46.     However, the $15.00 paid for state and regulatory fees constitute only a portion of the state and regulatory fees owed under the Policy.

47.     Progressive's underpayment of the ACV regulatory fees constituted a breach of contract.

48.     Dawson paid all premiums owed and otherwise satisfied all conditions precedent such that her insurance policy was in effect and operational at the time of the accident. By paying the claim—albeit insufficiently—Progressive acknowledged that Dawson satisfied all conditions precedent required under the Policy.

**Plaintiff Martinez**

49.     At all times material hereto, Plaintiff Martinez owned and insured a 2014 Cadillac CTS, VIN# 1G6DA1E32E0102045.

50.     Martinez insured the 2014 Cadillac (the "insured vehicle") under an insurance policy issued by Progressive. Ex. A; Ex. H (Martinez Decl. Sheet).  Progressive insured Martinez's vehicle according to this Policy at all times material hereto.

51.     On or about January 8, 2019, Martinez was involved in an accident while operating the insured vehicle. As a result of said accident, Martinez filed a claim for property damage with Progressive, claim number 19-3801711-01. Ex. I (Market Valuation Report) (the "Report").

52.     Following the filing of said claim, Progressive, through its third-party vendor, Mitchell, determined that the vehicle was a total loss with a base value of $13,648.92, with a condition adjustment

to increase the vehicle by $2,371.27, and an applicable deductible of $500.00 and therefore a Settlement Value of $15,520.19. *Id*.

53.     The base value and adjusted vehicle value are calculated by Mitchell based on the "sticker price" of comparable vehicles listed for sale in the local market.

54.     Progressive added sales tax of $1,241.56 and state and local regulatory fees of $188.00, for a total payment of $16,949.75. Ex. J (Total Loss Settlement Summary).

55.     However, the $188.00 paid for state and regulatory fees constitute only a portion of the state and regulatory fees owed under the Policy.

56.     Progressive's underpayment of the ACV regulatory fees constituted a breach of contract.

57.     Martinez paid all premiums owed and otherwise satisfied all conditions precedent such that her insurance policy was in effect and operational at the time of the accident. By paying the claim—albeit insufficiently—Progressive acknowledged that Martinez satisfied all conditions precedent required under the Policy.

## CLASS ACTION ALLEGATIONS

58.     Plaintiffs bring this action seeking representation of a class pursuant to Federal Rule of Civil Procedure 23.

59.     Plaintiffs bring this action as class representatives, on behalf of themselves and on behalf of all other persons or entities similarly situated, more specifically defined as follows, and hereinafter referred to as the "Class":

> All individuals insured under a California policy issued by Progressive West Insurance Company or Progressive Select Insurance Company with the same operative policy language covering an owned or financed vehicle with private-passenger auto physical damage coverage with comprehensive or collision coverage, who made a first-party claim, whose claim was determined to be, and adjusted as, a total loss under comprehensive or collision coverage, and where the total loss payment included a prorated amount (or no amount) for state and local regulatory fees imposed by the State of California ("ACV regulatory fees") within four years prior to the date on which this lawsuit was filed through the date of any certification order.

60.     Certification of the above class is supported by the following considerations:

    a.   The relatively small amount of damages that members of the Class has suffered on an individual basis would not justify the prosecution of separate lawsuits;

    b.   Counsel in this class action are not aware of any previously filed litigation against Progressive West Insurance Company or Progressive Select Insurance Company in which any of the members of the class is a party and which any question of law or fact in the subject action can be adjudicated; and

    c.   No difficulties would be encountered in the management of Plaintiffs' claim on a class action basis, because the class is readily definable, and the prosecution of this class action would reduce the possibility of repetitious litigation.

61.     Although the precise number of members of the Class is unknown to Plaintiffs at this time and can only be determined through appropriate discovery, Plaintiffs understand Defendants to be one of the largest motor vehicle insurers in the State of California—one that writes hundreds of millions of dollars of physical damage coverage premiums.  Thus, the Class of persons affected by Defendants' unlawful practice alleged herein consists of thousands of individuals, or the class of persons effected are otherwise so numerous that joinder of all class members is impractical. The unlawful practice alleged herein is a systematic and uniform practice, employed by Defendants in violation of standardized and uniform insurance policy language, which results in the retention by Defendants of insurance benefits and monies properly owed to Plaintiffs and the Class members.

62.     The precise number of members of the Class can only be determined through discovery. However, upon information and belief, including investigation by their attorneys and public information concerning the statistical likelihood of total losses per premiums written, Plaintiffs believe the Class is comprised of approximately 100,000 members. Numerosity under Rule 23(a)(1) is established.

63.     Rule 23(a)(2)'s commonality requirement is also satisfied. The central issues in this litigation turn on the interpretation of materially identical policy provisions; thus, this case is well-suited for class-wide adjudication. Defendants and all members of the Class, including Plaintiffs, are bound by materially identical policy terms.

64.     As to the Class, common questions include (but are not limited to): (1) whether Defendants' Policy promised to pay insureds regulatory fees upon the total loss of an insured vehicle; (2) whether Defendants are permitted to pay only a partial or prorated amount of regulatory fees.

65.     Rule 23(a)(3)'s typicality requirement is satisfied because Plaintiffs and members of the Class were injured by Defendants' uniform misconduct.  Further, Plaintiffs and Class members' legal claims arise from the same core practices: namely, the failure to pay the full ACV of insured vehicles on first-party total loss claims. Plaintiffs' claims are based upon the same legal theories as those of the members of the Class. Plaintiffs suffered the same harm as all other members of the Class: the coverage for regulatory fees that Defendants underpaid its insureds. Plaintiffs are not subject to any unique defenses nor do Plaintiffs bring any unique claims.

66.     The relevant Policy provisions for each Class member are the same. The relevant law relating to the interpretation and application of those Policy provisions for each Class member is the same.

67.     Rule 23(b)(3)'s predominance requirement is satisfied. The previously articulated common issues of fact and law predominate over any question solely affecting individual Class members.

68.     As to the Class, the critical common question—does Defendants' promise to pay the ACV of the total loss vehicle obligate it to include ACV regulatory fees—is identical for every member of the Class.

69.     Further, the measure of damages, if any, is the same for every member of the Class, and any variances in damages will reflect only variances in the prorated amount paid in ACV regulatory fees, the application of which is a purely ministerial function. Otherwise, there are no individualized questions of fact or law.

70.     Further, Rule 23(b)(3)'s superiority requirement is met here: class treatment is superior to any other alternative method of adjudication because the damages suffered by individual members of the Class is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class members to seek individual redress

-11-

CLASS ACTION COMPLAINT

for the wrongs done to them. Even if some members of the Class could afford individual litigation, the court system could not. Thousands of individual cases asserting precisely the same claim that Plaintiffs assert here would be uneconomical and would strain (indeed, likely overwhelm) judicial resources.

71.     As to the Class, class treatment is superior because every claim will be substantially determined by answering the single question of whether Defendants' Policy obligates payment of ACV Regulatory Fees. It is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. No difficulty would be encountered in the management of this case that would preclude its maintenance as a class action. To the contrary, several other similar total loss class actions against other insurers were successfully treated as class actions.

72.     Plaintiffs and their counsel will fairly and adequately protect and represent the interests of each member of the Class. Plaintiffs possess no conflict with members of the Class. Plaintiffs' claim does not conflict with that of any member of the Class, and Plaintiffs have no financial or any other interest conflicting with those of the Class. Plaintiffs fully intend to vigorously protect the interests of Class members in prosecuting these claims.

73.     Plaintiffs are committed to the vigorous prosecution of this action and retained competent counsel experienced in prosecuting and defending class actions. Moreover, Plaintiffs' counsel have successfully litigated other class action cases similar to that here, where insurers breached contracts with insureds by failing to include ACV Regulatory Fees after total losses.

## FIRST CLAIM FOR RELIEF
## BREACH OF CONTRACT

74.     Plaintiffs incorporate by reference paragraphs 1-77 as though fully set forth herein.

75.     Plaintiffs were party to an insurance contract with Defendants as described herein.  All Class members were parties to insurance contracts with Defendants containing materially identical terms.

76.     The interpretation of Plaintiffs' and all Class members' Policies is governed by California law.

77.     Plaintiffs and all Class members made a claim determined by Defendants to be a first-party total loss under the insurance policy and determined by Defendants to be a covered claim.

78.     Defendants, by paying the total loss claim, determined that Plaintiffs and each Class member complied with the terms of his or her insurance contract, and fulfilled all required duties and conditions under the Policies for the insured to be paid on his or her total loss.

79.     Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, Plaintiffs and Class members were owed the ACV of the vehicle, which, per the terms of the Policies, includes ACV Regulatory Fees in the amounts set by California law.

80.     Defendants refused or otherwise failed to pay ACV Regulatory Fees as part of its purported ACV payment to Plaintiffs and every Class member, following Defendants' determination that a vehicle was a total loss.

81.     Defendants' failure to provide full payment for the ACV Regulatory Fees constitutes a material breach of contract with Plaintiffs and every Class member.

82.     As a result of said breaches, Plaintiffs and the Class members are entitled, under Defendants' Policies, to sums representing the benefits owed for ACV Regulatory Fees, as well as costs, pre-judgment and post-judgment interest, injunctive relief and other relief as is appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Morrissette, Dawson, and Martinez, on behalf of themselves and the Class, demand a trial by jury on all triable issues and seek and pray for relief and judgment as follows:

a.      For an Order certifying this action as a Class Action on behalf of the Class described above;

b.      For an award of compensatory damages for Plaintiffs and members of the Class in amounts owed under the Policies;

c.      For all other damages according to proof;

d.      For an award of attorney's fees and expenses as appropriate pursuant to applicable law;

e.      For pre- and post- judgment interests on any amounts awarded; and

g.      For other and further forms of relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.


DATED: November 1, 2019.

                                                    **TYCKO & ZAVAREEI LLP**


                                        By:     s/ *Annick M. Persinger*
                                                _____

                                                Annick M. Persinger (SBN 272996)
                                                Maren I. Christensen (SBN 320013)
                                                apersinger@tzlegal.com
                                                mchristensen@tzlegal.com
                                                **TYCKO & ZAVAREEI LLP**
                                                1970 Broadway, Suite 1070
                                                Oakland, CA 94612
                                                Telephone: (510) 254-6808
                                                Facsimile: (202) 973-0950

                                                Scott Edelsberg*
                                                **EDELSBERG LAW, PA**
                                                20900 NE 30th Ave., #417
                                                Aventura, FL 33180
                                                Telephone: (305) 975-3320
                                                scott@edelsberglaw.com

                                                Andrew Shamis*
                                                **SHAMIS & GENTILE, P.A.**
                                                14 NE 1st Avenue, Suite 400
                                                Miami, FL 33132
                                                Telephone: (305) 479-2299
                                                ashamis@shamisgentile.com

                                                Rachel Dapeer*
                                                **DAPEER LAW, P.A.**
                                                300 S Biscayne Blvd., #2704
                                                Miami, FL 33131
                                                Telephone: (305) 610-5223
                                                rachel@dapeer.com

                                                * *Pro Hac Vice to follow*

                                                *Attorneys for Plaintiffs and the*
                                                *Proposed Class*